UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASQ MARKETING, INC., <br><br> Plaintiff, <br><br> v. <br><br> RENUEN CORPORATION, BELVEDERE GLOBAL STRATEGIES, PRINCETON CORPORATE SOLUTIONS, and JAMES SCOTT BROWN, <br><br> Defendants. | Civil Action No. <br><br><br> COMPLAINT |

Plaintiff MASQ Marketing, Inc. ("MASQ"), by and through its attorneys, Andrew M. Ayers, P.C., as and for its Complaint against Defendants RenuEn Corporation ("RenuEn"), Belvedere Global Strategies ("Belvedere"), Princeton Corporation Solutions ("Princeton"), and James Scott Brown ("Scott") alleges as follows:

### NATURE OF CASE

1. This is an action for damages for breach of contract, unjust enrichment and goods and services sold and delivered resulting from Defendants' failure to pay Plaintiff MASQ for marketing services performed for Defendants and failure to reimburse MASQ for expenses advanced on behalf of Defendants.

1

## PARTIES

2. MASQ is a marketing company organized under the laws of the State of New York with its principal place of business at 80 Madison Avenue, Suite 2H, New York, New York 10016.

3. Upon information and belief Defendant RenuEn is a company organized under the laws of the State of Florida with its principal place of business at 73 Old Dublin Pike, Suite 10, #142, Doylestown, Pennsylvania 18901. At the time of the execution of the contract, RenuEn's corporate name was Shaka Shoes, Inc. On December 12, 2011, Shaka Shoes filed an Amendment and Name Change with the State of Florida, changing its name to RenuEn Corporation. RenuEn has done and is doing business in the State of New York.

4. Upon information and belief Defendant Belvedere is a company organized under the laws of the State of Delaware with its principal place of business at 73 Old Dublin Pike, Suite 10, #142, Doylestown, Pennsylvania 18901, and previously maintained an office at 11 Penn Plaza, 5th Floor, New York, New York 10021. Belvedere has done and is doing business in the State of New York.

5. Upon information and belief Defendant Princeton is a company organized under the laws of the State of Delaware with its principal place of business at 73 Old Dublin Pike, Suite 10, #142, Doylestown, Pennsylvania 18901, and previously maintained an office at 11 Penn Plaza, 5th Floor, New York, New York 10021. Princeton has done and is doing business in the State of New York.

6. Upon information and belief Defendant Scott is an owner and officer of Belvedere, Princeton and RenuEn and is a resident of the State of Pennsylvania, County of Bucks. Upon information and belief, "James Scott" is an alias used by an individual named James Scott Brown, and Mr. Brown also utilizes the aliases of "James S. Brown", "Jamie S. Brown", "Jay Brown" and "Jai Brown".

## JURISDICTION

7. Personal jurisdiction over Defendant RenuEn is proper in this Court because RenuEn conducts business in New York and the parties have expressly conferred jurisdiction upon this Court pursuant to the terms of the contract between MASQ and RenuEn.

8. Personal jurisdiction over Defendant Belvedere is proper in this Court because Belvedere conducts business in New York and the parties have expressly conferred jurisdiction upon this Court pursuant to the terms of the contract between MASQ and Belvedere.

9. Personal jurisdiction over Defendant Princeton is proper in this Court because Princeton conducts business in New York and the parties have expressly conferred jurisdiction upon this Court pursuant to the terms of the contract between MASQ and Princeton.

10. Personal jurisdiction over Defendant Scott is proper because as the primary corporate officer of RenuEn, Belvedere and Princeton, he conducts business in New York and has so conducted his business in New York.

11. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) as the controversy is between a citizen of a State and citizens of a foreign state and Plaintiff seeks damages in an amount in excess of $75,000.

12. Venue is proper under 28 U.S.C. § 1391(a), as Defendants RenuEn, Belvedere and Princeton are corporations subject to the personal jurisdiction in this District, and therefore is deemed a resident of this District pursuant to 28 U.S.C. § 1391(a).

13. Venue in this district is also proper because Defendant RenuEn consented to the jurisdiction of this Court pursuant to Paragraph 16 of the Contract between MASQ and RenuEn:

> **Governing Law; Jurisdiction**
>
> This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to its conflict of law rules. The parties agree that any action or proceeding relating to this Agreement shall only be instituted in a state or federal court located in New York County, New York. Both parties consent to the jurisdiction of such courts.

14. Venue in this district is also proper because Defendant Belvedere consented to the jurisdiction of this Court pursuant to Paragraph 16 of the Contract between MASQ and Belvedere:

> **Governing Law; Jurisdiction**
>
> This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to its conflict of law rules. The parties agree that any action or proceeding relating to this Agreement shall only be instituted in a state or federal court located in New York County, New York. Both parties consent to the jurisdiction of such courts.

15. Venue in this district is also proper because Defendant Princeton consented to the jurisdiction of this Court pursuant to Paragraph 16 of the Contract between MASQ and Princeton:

**Governing Law; Jurisdiction**

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to its conflict of law rules. The parties agree that any action or proceeding relating to this Agreement shall only be instituted in a state or federal court located in New York County, New York. Both parties consent to the jurisdiction of such courts.

## FACTUAL ALLEGATIONS

**Introduction**

16. On or about May 29, 2011, "James Scott", a corporate officer of Defendants Belvedere, Princeton and RenuEn requested that MASQ provide marketing services, including corporate branding, web development and image consultancy services, for his work with the respective companies.

17. Upon information and belief, Defendant Scott is the primary officer of Defendants Belvedere, Princeton and RenuEn and controls each company.

18. Beginning on May 29, 2011, MASQ provided marketing services to and paid expenses on behalf of Defendant Scott to assist him in maintaining his corporate image, including paying for airfare, hotel, other travel expenses, wardrobe, tattoos and other expenses consistent with Scott's desired image. Disbursements also included lifestyle and client entertainment expenses for meetings and business development engagements including meals, alcohol and cigars.

19. Defendant Scott repeatedly promised that MASQ would be paid for the work that it performed on behalf of the companies.

20. MASQ has provided goods and services to Defendants in the amount of $179,401.

21. MASQ has been paid $30,000 to date, including $5,000 on November 18, 2010, and $5,000 on November 23, 2010, from Shaka Shoes, Inc. Additional payments were made in the amount of $7,000 on April 19, 2012, and $13,000 on May 3, 2012, from a company called Assets Corporate Solutions, which, upon information and belief, is another company controlled by Defendant Scott.

**Belvedere and Princeton Marketing Services**

22. On or about June 14, 2011, MASQ commenced work and on or about October 12, 2011, MASQ and Defendant Belvedere entered into a contract for MASQ to provide marketing services to Belvedere and for MASQ to be compensated for its work in connection therewith (the "Belvedere Contract").

23. On or about June 14, 2011, MASQ commenced work and on or about October 12, 2011, MASQ and Defendant Princeton entered into a contract for MASQ to provide marketing services to Princeton and for MASQ to be compensated for its work in connection therewith (the "Princeton Contract").

24. In addition to the services described herein, *supra*, MASQ assisted Defendant Belvedere with crisis management to address dissatisfied shareholders of the respective company, including shareholder communications and vetting of an SEC attorney on behalf of Defendant Scott. MASQ also provided lodging and office space

due to Scott's inability to pay office rental space at 11 Penn Plaza, 5th Floor, New York, New York 10021.

25. The time required by MASQ to provide marketing services to Defendants Belvedere and Princeton impaired MASQ's ability to provide services to its other clients.

**26.** Pursuant to the terms of the Belvedere Contract and the Princeton Contract, on or about November 16, 2011, MASQ completed its marketing services for Defendants Belvedere and Princeton and issued an invoice for $27,500. This invoice remains unpaid.

**RenuEn Marketing Services**

27. On or about November 5, 2011, MASQ commenced work and on or about December 1, 2011, MASQ and Defendant RenuEn entered into a contract for MASQ to provide marketing services to RenuEn and for MASQ to be compensated for its work in connection therewith (the "RenuEn Contract").

28. Pursuant to the terms of that contract, MASQ performed marketing services for Defendant RenuEn with a total cost of $29,000.

29. Defendant RenuEn paid MASQ $5,000 on November 18, 2011 and another $5,000 on November 23, 2011.

30. MASQ continued to provide marketing services for Defendant RenuEn up to and including February 2, 2012.

31. On or about December 15, 2011, Defendant RenuEn defaulted from the agreed payment schedule.

32. On or about December 15, 2011, Defendant RenuEn proposed and committed to a revised payment schedule for the remainder balance of $19,000 in the

amount of $10,000 on January 15, 2012 and $9,000 on January 31, 2012. This amount remains unpaid.

33. On or about January 20, 2012, Defendant Scott confirmed the inability to meet the agreed payment schedule

34. In addition to the services described herein, *supra*, MASQ assisted with Defendant Scott to address internal merger conflicts, severance of email accounts and corporate telecommunication system and retraction of business cards and other RenuEn branded assets and materials.

35. On or about February 8, 2012, Defendant Scott agrees to the payment of $19,000 on or about February 22, 2012. This amount remains unpaid.

36. Also on or about February 8, 2012, Defendant Scott commits to the full payment of the remainder balance of $19,000 without requiring MASQ to meet all contractual deliverables because Defendant RenuEn did not terminate the contract within the required 30 days as agreed on Paragraph 9 of the Contract between MASQ and RenuEn:

> **Term; Termination and Survival**
>
> The term (the "Term") of this Agreement shall commence as of the date hereof and continue for a period of 30 days from the last date of delivery of any MASQ Materials or services provided for in any outstanding Work Statement. Either party may terminate this Agreement if the other party breaches a material term of the Agreement and fails to cure such breach within 30 days after notice thereof. MASQ's right to receive fees and expenses (or other revenues) accrued during the Term shall survive any such termination. In addition Sections 3-8, 13, 17 and 18 shall survive any such termination.

SHKZ, without cause, may terminate this Agreement or any Work Statement fourteen days after providing written notice of termination to MASQ ("Termination Notice"), provided that SHKZ pays to MSAQ the Termination For Convenience Fee (as hereinafter defined). MASQ shall begin to wind down its services in a prompt manner after SHKZ provides a Termination Notice to MASQ. The Termination For Convenience Fee shall be the amount equal to the number of hours billed by the Work Statement project team over the course of the two-weeks preceding receipt of the Termination Notice, as calculated on a time and materials basis at MASQ current hourly rates. The Termination For Convenience Fee shall be in addition to any amounts due and owing MASQ for services rendered up to the date of termination, calculated on a time and materials basis applying the effective hourly rates used in pricing such Work Statement, less any payments made by SHKZ for such services rendered up to the date of termination or the Termination For Convenience Fee.

37. The time required by MASQ to provide marketing services to Defendant RenuEn impaired MASQ's ability to provide services to its other clients.

38. There is still a remaining balance of $19,000 due and owing to MASQ for its work for Defendant RenuEn.

**Belvedere/Princeton/RenuEn Image Consultancy**

39. In connection with his roles with Defendants Belvedere, Princeton and RenuEn, Defendant Scott utilized the services of MASQ for image consultancy including "vetting" of third party publicity firms, Online Reputation Management and expenses on behalf of Scott to assist him in maintaining his corporate image, including paying for airfare, hotel, other travel expenses, wardrobe, tattoos and other expenses consistent with Scott's desired image. Disbursements also included lifestyle and client entertainment expenses for meetings and business development engagements including meals, alcohol and cigars.

40. To date, MASQ has provided image consultancy services and advanced disbursements on behalf of all Defendants in the amount of $122,901, for which it has not been reimbursed by any of the Defendants.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Belvedere and Princeton Contracts)

41. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

42. Defendant Belvedere, by its authorized representative, executed the Belvedere Contract and MASQ performed its obligations under the terms of the Contract.

43. Defendant Princeton, by its authorized representative, executed the Princeton Contract and MASQ performed its obligations under the terms of the Contract.

44. MASQ performed its services for both Defendants Belvedere and Princeton concurrently and they are jointly and severally liable for such services.

45. Defendant Belvedere has breached the Belvedere Contract by failing to pay the sums due and owing thereunder.

46. Defendant Defendant Princeton has breached the Princeton Contract by failing to pay the sums due and owing thereunder.

47. MASQ has been damaged in an amount to be proven at trial, but in no event less than $27,500.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of RenuEn Contract)

48. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

49.     Defendant RenuEn, by its authorized representative, executed the RenuEn Contract and MASQ performed its obligations under the terms of the Contract.

50.     Defendant RenuEn has breached the RenuEn Contract by failing to pay the sums due and owing thereunder.

51.     MASQ has been damaged in an amount to be proven at trial, but in no event less than $19,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

52.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

53.     Defendants Belvedere, Princeton, RenuEn and Scott have received goods and services from MASQ.

54.     As a result of MASQ's expenditures and actions, Defendants Belvedere, Princeton, RenuEn and Scott have benefitted monetarily and economically.

55.     Defendants Belvedere, Princeton, RenuEn and Scott have not adequately compensated MASQ for their goods and services.

56.     Under principles of equity and good conscience, Defendants Belvedere, Princeton, RenuEn and Scott should not be permitted to keep MASQ's goods and services without adequately compensating MASQ.

57.     Defendants Belvedere, Princeton, RenuEn and Scott have therefore been unjustly enriched to the detriment of MASQ in an amount to be determined at trial, but in no event less than $149,401.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Goods Sold and Delivered)

58.  Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

59.  Defendants Belvedere, Princeton, RenuEn and Scott received goods and services from MASQ pursuant to the Belvedere Contract, Princeton Contract and RenuEn Contract and the business relationships between the parties.

60.  As a result of same, Defendants Belvedere, Princeton, RenuEn and Scott owe MASQ no less than $149,401 for the goods and services sold and delivered between 2011 and the present.

61.  By reason of the goods and services sold and delivered, MASQ has been damaged in an amount to be proven at trial, but in no event less than $149,401.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants as follows:

a.  On the First Cause of Action for Breach of Contract awarding damages against Defendants Belvedere and Princeton jointly and severally in an amount to be proven at trial, but in no event less than $27,500;

b.  On the Second Cause of Action for Breach of Contract awarding damages against Defendant RenuEn in an amount to be proven at trial, but in no event less than $19,000;

    c.    On the Third Cause of Action for Unjust Enrichment awarding damages jointly and severally in an amount to be proven at trial, but in no event less than $149,401;

    d.    On the Fourth Cause of Action for Goods Sold and Delivered awarding damages jointly and severally in an amount to be proven at trial, but in no event less than $149,401;

    e.    On all of the claims for relief, costs, expenses and counsel fees incurred by Plaintiff in this Action;

    f.    Interest on all sums awarded to Plaintiff by this Court;

    g.    Such other and further relief as this Court may deem just and proper.

Dated:    June 15, 2012

        ANDREW M. AYERS, P.C.
        *Attorney for Plaintiff MASQ Marketing*

By: _____
    Andrew M. Ayers (AA-2198)
    540 President Street, 3rd Floor
    Brooklyn, New York 11215
    Telephone: (718) 568-0221
    Facsimile: (718) 701-5694
    ayers@andrewmayers.com