UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X
MASQ MARKETING, INC.

       Plaintiff,            12 Civ. 4717 (DLC)

       -against-

RENUEN CORPORATION,
BELVEDERE GLOBAL STRATEGIES,
PRINCETON CORPORATE SOLUTIONS
and JAMES SCOTT BROWN,

       Defendants.
- - - - - - - - - - - - - - - -X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES SCOTT BROWN'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) & (6) FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

Roland R. Acevedo (RA 8915)
Scoppetta Seiff Kretz &
  Abercrombie
444 Madison Ave, 30th floor
New York, New York 10022
(212) 371-4500

Counsel for Defendants

## Table of Contents

Preliminary Statement ......................................... 1

Statement of Facts ........................................... 2

Argument ..................................................... 5

Point I ...................................................... 5

     PLAINTIFF FAILS TO STATE A CLAIM UNDER NEW YORK LAW AGAINST
     DEFENDANT JAMES SCOTT BROWN IN THE THIRD, FOURTH AND FIFTH
     CAUSES OF ACTIONS SINCE THE AMENDED COMPLAINT DOES NOT
     ALLEGE THAT SCOTT AGREED IN WRITING TO BE PERSONALLY LIABLE
     FOR THE DEBTS OF THE BUSINESS ENTITIES; ACCORDINGLY, THE
     COURT SHOULD GRANT DEFENDANT'S 12(b)(6)
     MOTION............................................      5

Point II ................................................... 13

     PLAINTIFF HAS FAILED TO ESTABLISH THAT THIS COURT HAS
     PERSONAL JURISDICTION OVER DEFENDANT SCOTT; ACCORDINGLY,
     THE COURT SHOULD GRANT DEFENDANT'S 12(b)(2) MOTION. ..... 13

Conclusion ................................................. 19

## <u>Table of Authorities</u>

**Cases**

Al Sayegh Bros. Trading LLC v. Doral Trading & Export, Inc.,
  219 F. Supp.2d 285 (E.D.N.Y. 2002) ...........................8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .........................................5

Aquiline v. Capital Partners, LLC v. Finarch, LLC,
  __F. Supp.2d ___, 2012 WL 1764218
  (S.D.N.Y. May 17, 2012) ................................17, 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................5, 6

*Biro v. Conde Nast,*
11 Civ. 4442, 2012 WL 3264059 (S.D.N.Y. Aug. 9, 2012) .........5

*Briese Lichttechnik Vertriebs v. Langton,* 09 Civ. 9790,
  2010 WL 4615958 (S.D.N.Y. Nov. 9, 2010) ....................14

*Chaplin v. Kido Indus. Co., Ltd.,* 10 CV 05711,
  2011 WL 2421309 (S.D.N.Y. June 7, 2011) ...................13

*Conyers v. Rossides,*
  558 F.3d 137 (2d Cir. 2009) ...............................13

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ..............6

*Gordon v. Teramo & Co., Inc.*
  308 A.D.2d 432 (2d Dep't 2003)..7

*Gorta v. Capala Bros., Inc.,*
  257 F.R.D. 353 (E.D.N.Y. 2009) .............................1

*Grand River Enterprises Six Nations Ltd. v. Pryor,*
  425 F.3d 148 (2d Cir. 2005) ...............................13

*Karabu Corp. v. Gitner,*
  16 F. Supp.2d 319 (S.D.N.Y. 1998) .............13, 14, 15, 16

Karl Ehmer v. Forest Hills Corp. v. Gonzalez,
  159 A.D.2d 163 (2d Dep't 1990)........................... 8

*Kinectic Instruments v. Lares,*
  802 F. Supp. 976 (S.D.N.Y. 1992) ..........................16

*Krauss v. Manhattan Life Insurance Co. of New York*,
   643 F.2d 98 (2d Cir. 1981) ....................................6

*Limarvin v. Edo Restaurant Corp.*, 11 Civ. 7356,
   2012 WL 3297734, (S.D.N.Y. Aug. 10, 2012) ...................5

*Mangia Media Inc. v. University Pipeline, Inc.*,
   846 F. Supp. 2d 319 (E.D.N.Y. 2012) ........................13

*McKay v. Communispond, Inc.*,
   581 F. Supp. 801 (S.D.N.Y. 1983) ..............................6

*Metropolitan Switch Board Co. v. Amici Assoc., Inc.*,
   20 A.D.3d 455 (2d Dep't 2005) ...........................7, 11

*Ontel Products, Inc. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y. 1995) ..........................16

*Pilates, Inc. v. Current Concepts*, 96 Civ. 0043,
   1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) ...................16

Ricciuti v. New York City Transit Auth.,
   90 Civ. 2823, 1991 WL 221110
   (S.D.N.Y. Oct. 3, 1991 ......................................1

*Salzman Sign Co. v. Beck*,
   10 N.Y.2d 63 (1961) .....................................7, 11

*Savoy Record Co. v. Cardinal Export Corp*,
   15 N.Y.2d 1 (1994) ......................................7, 11

*Westminster Construction Co. v. Sherman*,
   160 A.D.2d 867 (2d Dep't 1990) .............................11

**Rules/Statutes**

C.P.L.R. § 302(a)(1) ...........................................14
N.Y. Gen. Obligations Law § 5-701(a)(2) ...................7, 12

## Preliminary Statement

Defendant James Scott Brown ("Scott")[1] submits this memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 12(b)(2) & (6), to dismiss the amended complaint on the grounds that plaintiff has failed to state a claim against Scott upon which relief can be granted and the Court lacks personal jurisdiction over Scott.[2]

The amended complaint alleges causes of action for Breach of Contract, Unjust Enrichment, Goods and Services Sold and Delivered and Account Stated against RenuEn Corporation, Belvedere Global Strategies and Princeton Corporate Solutions (hereinafter "the business entities"). Scott, the alleged "owner and officer" of the business entities, is also named as a defendant in the Unjust Enrichment, Goods and Services Sold and Delivered and Account Stated claims.  Plaintiff MASQ Marketing, Inc. ("MASQ") contends that Scott, in his capacity as a corporate officer of the three business entities, asked MASQ to provide marketing services to his businesses. Plaintiff does not

---

[1] James Scott Brown is defendant's legal name. In the business world, defendant is commonly known as James Scott.

[2] The remaining defendant business entities have not filed a motion to dismiss and will answer the amended complaint when the Court disposes of the instant motion. It is well settled that the filing of a partial motion to dismiss suspends the time to answer those claims that are not subject to the motion. *See, e.g. Gorta v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y. 2009); *Ricciuti v. New York City Transit Auth.*, 90 Civ. 2823, 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991).

allege that Scott entered into any written contracts in which he agreed to be personally liable for the debts of the various business entities.

Under New York law, it is well settled that an individual who enters into an agreement in his capacity as an officer or agent of a corporation is generally not subject to personal liability for the corporation's debts. New York law also provides that an individual's promise or agreement to pay the debt of a third party must be in writing. Here, plaintiff does not allege that Scott agreed to be personally liable for the debts of any of the business entities, and the amended complaint does not allege that Scott agreed in writing to be responsible for the debts of the various business entities. Accordingly, plaintiff has failed to state a claim against defendant Scott under New York law. Plaintiff has also failed to establish that this Court has personal jurisdiction over Scott in his individual capacity under New York's long-arm jurisdiction statute because Scott's only alleged business activities in New York were conducted in his role as an agent of the defendant business entities and not in his individual capacity.

## Statement of Facts

MASQ is a New York corporation that is owned and controlled by Hanna Shin, the ex-paramour of defendant Scott. Scott Aff. in Support of Motion to Dismiss ("Scott Aff.") ¶ 3.  Ms. Shin and

2

Scott were involved in an intimate relationship that lasted approximately eight months. *Id.* During the relationship, Ms. Shin resided in a Madison Avenue apartment in Manhattan, the same address that is listed on the Department of State's website as the principal office for MASQ Marketing. *Id.* At times during the relationship, Scott would stay at Ms. Shin's apartment during his trips to New York City. Scott Aff. ¶ 4. In its amended complaint, plaintiff fails to disclose the relationship between Ms. Shin and Scott and, instead, falsely alleges that MASQ "provided lodging and office space" to Scott. Compl. ¶ 29. Upon information and belief, MASQ does not own or lease any separate space in New York but merely operates out of Ms. Shin's Manhattan apartment.

Plaintiff also contends that the business entities and Scott utilized the services of MASQ for "image consultancy" and that MASQ paid "expenses on behalf of Scott to assist him in maintaining his corporate image, including paying for airfare, hotel, other travel expenses, wardrobe [and] tattoos . . . ." Am. Compl. ¶ 44. Plaintiff also alleges that it disbursed money for expenses for meals, alcohol and cigars for the defendants. *Id.* Once again, what plaintiff fails to disclose to the Court is that the alleged expenses for airfare, hotel, travel expenses, tattoos, wardrobe, meals, alcohol and cigars had no business purpose and were for expenses that were incurred when

Ms. Shin and Scott were involved in a relationship. For example, the alleged expenses for airfare, hotel and travel expenses were incurred when the couple took personal trips to Mexico and Bermuda. Scott Aff. ¶ 6. The alleged expenses for meals, alcohol, cigars, tattoos and wardrobe were also personal expenses or gifts from Ms. Shin to Scott and had nothing to do with MASQ providing alleged services to any of the business entities. *Id.* Because the alleged disbursements for Scott were for personal reasons and were not business related, Scott did not transact business in New York in his personal capacity and his activities do not fall under New York's long-arm statute.

What this case represents is Ms. Shin's attempt, through the company she owns and controls, to extort money from Scott for ending their relationship. After Scott ended his relationship with Ms. Shin, she continued to contact him and made threats against his family and businesses unless he agreed to pay her significant amounts of money. Scott Aff. ¶ 7.  Scott felt threatened, filed a family offense petition in the New York County Family Court and obtained a temporary order of protection against Ms. Shin. *Id.* ¶ 8.  A short time after Scott filed the Family Court action, MASQ filed the instant claims in federal court. *Id.*  In the Amended Complaint, MASQ makes mention of the Family Court matter for the first time and sets forth a new and novel basis for this Court's jurisdiction over Scott. According

4

to plaintiff, personal jurisdiction over Scott is also proper because he has availed himself of the benefits and protections of the New York legal system by seeking judicial intervention against an unrelated party, the owner of MASQ, by filing an action in the New York State Family Court.

## Argument

### Point I

**PLAINTIFF FAILS TO STATE A CLIAM UNDER NEW YORK LAW AGAINST DEFENDANT JAMES SCOTT BROWN IN THE THIRD, FOURTH AND FIFTH CAUSES OF ACTIONS SINCE THE AMENDED COMPLAINT DOES NOT ALLEGE THAT SCOTT AGREED IN WRITING TO BE PERSONALLY LIABLE FOR THE DEBTS OF THE BUSINESS ENTITIES; ACCORDINGLY, THE COURT SHOULD GRANT DEFENDANT'S 12(b)(6) MOTION.**

A. The Applicable Legal Standards

To defeat a motion for dismissal under Rule 12(b)(6), a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Limarvin v. Edo Restaurant Corp.*, 11 Civ. 7356, 2012 WL 3297734, at *1 (S.D.N.Y. Aug. 10, 2012), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the complaint contains sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009); *Biro v. Conde Nast*, 11 Civ. 4442, 2012 WL 3264059, at *7 (S.D.N.Y. Aug. 9, 2012).

As the Supreme Court noted in *Twombly*, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Twombly,* 550 U.S. at 570.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and it must draw all inferences in plaintiff's favor. *Biro,* 2012 WL 3264059, at *7.

When an action is based on diversity jurisdiction, the district court must apply the substantive law of the forum state. *Krauss v. Manhattan Life Insurance Co. of New York*, 643 F.2d 98, 100 (2d Cir. 1981), *citing Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also McKay v. Communispond, Inc.,* 581 F. Supp. 801, 806 n.4 (S.D.N.Y. 1983) (in diversity actions federal courts must apply the substantive law of the state in which it sits).  Here, the amended complaint alleges that MASQ, a New York corporation, entered into contracts with the defendant business entities that require the agreements to be governed and interpreted in accordance with New York law. Am. Compl. ¶¶ 17-19. Accordingly, the Court should apply New York law when determining if plaintiff has alleged a

claim against Scott in his individual capacity under New York law.

B. Plaintiff has Failed to State a Claim
   Under New York Law Against Defendant Scott

Under New York law, it is well settled that an individual who signs a corporate contract in his capacity as an officer or agent of the corporation and indicates the nature of his representative capacity is generally not subject to personal liability for the corporation's debts. *See, e.g., Savoy Record Co. v. Cardinal Export Corp*, 15 N.Y.2d 1, 6 (1994)(corporation that signed contract on behalf of another company not liable); *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67 (1961)(individual not personally liable for signing contract on behalf of corporation); *Metropolitan Switch Board Co. v. Amici Assoc., Inc.,* 20 A.D.3d 455, 456 (2d Dep't 2005)(defendants entitled to summary judgment since they executed contracts as corporate officers and without any intent to become personally liable; *Gordon v. Teramo & Co., Inc*. 308 A.D.2d 432, 433 (2d Dep't 2003)(principals of corporation are not liable for the corporation's contracts).

It is equally clear that under New York law a promise or agreement to answer for the debt or another must be in writing. New York's General Obligations Law § 5-701(a)(2), commonly known as the Statute of Frauds, provides, in relevant part, that every

agreement, promise or undertaking is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, . . . if such agreement, promise or undertaking" is "a special promise to answer for the debt, default or miscarriage of another person." *See also Karl Ehmer Forest Hills Corp. v. Gonzalez,* 159 A.D.2d 163 (2d Dep't 1990)(corporate officer's oral promise to guarantee debt of corporation was unenforceable and recovery was barred by the Statute of Frauds); *Al Sayegh Bros. Trading LLC v. Doral Trading & Export, Inc.,* 219 F. Supp.2d 285, 293 (E.D.N.Y. 2002)(under New York law corporate officer's oral statement that he would be personally responsible for corporation's debts did not satisfy the Statute of Frauds and thus officer could not be held liable for corporation's debts).

Here, it is clear from the amended complaint that any contract that Scott allegedly signed was signed in his capacity as an officer or agent for the three business entities. Plaintiff alleges that defendant Scott is an owner and officer of Belvedere and Princeton, and is the primary corporate officer of RenuEn and Belvedere. Am. Compl. ¶¶ 6, 11, 22. The amended complaint further alleges that on or about May 29, 2011, "James Scott, a corporate officer of defendants Belvedere, Princeton and RenuEn, requested that MASQ provide marketing services" and "image consultancy" for his work with his respective companies.

8

Am. Compl. ¶ 20.  The amended complaint also alleges that Belvedere, Princeton and RenuEn (not Scott) entered into contracts with MASQ, and that MASQ provided services to the corporations. Am. Compl. ¶¶ 27, 31-32. The amended complaint further alleges that Scott utilized the services of MASQ for image consultancy in connection with his roles with defendants Belvedere, Princeton and RenuEn. Am. Compl. ¶ 44; *see also* Am. Compl. ¶ 20 (Scott asked MASQ to provide image consultancy for his work with his "respective companies").

With respect to the alleged monies owed to MASQ, plaintiff alleges that it issued an invoice to Belvedere and Princeton for $27,500, and that RenuEn proposed and committed to a revised payment schedule for an outstanding debt of $19,000. Am. Compl. ¶¶ 31, 37. Plaintiff further alleges that Scott and the business entities "received goods and services from MASQ pursuant to the Belvedere Contract, Princeton Contract and RenuEn Contract and the business relationships between the parties." Am. Compl. ¶ 64.  The amended complaint does not allege that any invoices were issued to Scott, that he agreed to be personally liable for the alleged outstanding debts of the business entities, or that he received any services or goods in his personal capacity. More importantly, the amended complaint does not allege that Scott signed any written agreement or promise stating that he would be personally liable for the business entities' debts.

It is clear from the allegations in the amended complaint that MASQ did not provide any personal services to Scott, and that any disbursements made or services provided by plaintiff were pursuant to the alleged contracts between MASQ and the three business entities. The parties to the alleged contracts are the business entities and MASQ, and plaintiff states that Scott was acting in his capacity as a corporate officer when he requested MASQ's services for the business entities. According to the amended complaint, the "image consultancy" services allegedly provided to Scott were done to "assist him in maintaining his corporate image" in "connection with his roles with Defendants Belvedere, Princeton and RenuEn," and the alleged disbursements were made on behalf of Scott to "assist him in maintaining his corporate image, including paying for airfare, hotel, other travel expenses, wardrobe, tattoos and other expenses . . . ." Am. Compl. ¶¶ 20, 44.  None of the alleged services, goods or expenses was for Scott's personal use or gain. In fact, as set forth in Scott's annexed affidavit, most of the alleged expenses were for personal trips that Scott and Hanna Shin, MASQ's owner, took while they were involved in a personal relationship. Scott Aff. ¶ 6.[3]

---

[3] Plaintiff also fails to explain how allegedly disbursing money for tattoos, alcohol and cigars for Scott assisted him in maintainingg a corporate image.

Plaintiff does not allege, nor could it, that Scott agreed in writing to be personally liable for the contracts that the three business entities allegedly had with MASQ.[4] In the absence of any allegation or documentary proof annexed to the amended complaint that establishes that Scott agreed to be personally liable for the alleged debts of the business entities, the causes of action that seek to hold Scott liable in his individual capacity for the alleged debts of the business entities must be dismissed. *See Savoy,* 15 N.Y.2d at 6; *Salzman*, 10 N.Y.2d at 67; *Metropolitan Switch Board Co.*, 20 A.D.3d at 455-56; *see also Westminster Construction Co. v. Sherman*, 160 A.D.2d 867, 868 (2d Dep't 1990)(corporate officers may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts).  Even assuming *arguendo* that the Court accepts plaintiff's contention that Scott orally agreed to be personally liable for the debts of the various corporations, the debts are still not enforceable under New York law since the

---

[4] In an effort to avoid dismissal of the claims against Scott in the original complaint, plaintiff now alleges in the Amended Complaint that Scott repeatedly promised that MASQ would be paid for the work it performed on behalf of the companies. Am. Compl. ¶ 24. This allegation still falls short of alleging that Scott agreed to "personally liable" for the debts of the business entities. At best, the gist of the new allegation is that Scott promised that the corporation would paid the alleged debt. Plaintiff also fails to allege that Scott's promise was in writing.

alleged promises or agreements were not in writing. Pursuant to New York's Statute of Frauds, any promise to pay the debt of another is unenforceable unless that promise is in writing. Gen. Obligations Law § 5-701(a)(2);

The newly alleged cause of action for Account Stated must also be dismissed against Scott since it fails to state a claim. Plaintiff alleges in this cause of action that it provided invoices and statements to the "defendants." Yet, it is clear from the allegations in the amended complaint that the only invoices and statements MASQ allegedly issued were sent to the business entities and not Scott in his individual capacity. Am. Compl. ¶¶ 31, 37.

In sum, plaintiff fails to allege a claim against defendant Scott in his individual capacity under New York law because the amended complaint does not allege that Scott agreed in writing to be personally liable for the debts of the three business entities. The amended complaint also makes clear that the goods and services provided and the disbursements made on behalf of Scott were done in his capacity as a corporate officer for the business entities and not in his individual capacity. Accordingly, the Court should dismiss the Third, Fourth and Fifth Causes of Action against Scott.

### Point II

**PLAINTIFF HAS FAILED TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT SCOTT; ACCORDINGLY, THE COURT SHOULD GRANT DEFENDANT SCOTT'S 12(b)(2) MOTION.**

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009); *Grand River Enterprises Six Nations Ltd. v. Pryor,* 425 F.3d 148, 165 (2d Cir. 2005). Personal jurisdiction over a non-domiciliary in a diversity case is determined according to the laws in which the district court sits, in this case New York. *Karabu Corp. v. Gitner*, 16 F. Supp.2d 319, 322 (S.D.N.Y. 1998).

Courts generally apply a two-step analysis to determine whether personal jurisdiction exists in federal court in New York over a non-domiciliary. First, the district court must apply New York's long-arm statute and, if that statute is satisfied, the court must then examine if the exercise of jurisdiction comports with due process under the 14th Amendment. *Mangia Media Inc. v. University Pipeline, Inc.*, 846 F. Supp. 2d 319 (E.D.N.Y. 2012); *Chaplin v. Kido Indus. Co., Ltd.,* 10 CV 05711, 2011 WL 2421309, at * 2 (S.D.N.Y. June 7, 2011).  New York's long-arm statute provides that a court may exercise

personal jurisdiction over a non-domiciliary who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state. C.P.L.R. § 302(a)(1).

An individual's status as a corporate officer by itself is insufficient to confer personal jurisdiction over the individual. *Briese Lichttechnik Vertriebs v. Langton,* 09 Civ. 9790, 2010 WL 4615958, at *3 (S.D.N.Y. Nov. 9, 2010). However, a corporate officer may still be subject to personal jurisdiction under New York's long-arm statute if the plaintiff can establish that "the transaction at issue performed by the corporation was within the knowledge and consent of the officer and the officer exercised control over the corporation in the transaction." *Id.* A plaintiff makes a prima facie showing of "control" where it details the defendant's conduct so as to persuade the district court that the officer was a "primary actor" in the transaction in question. *Id., citing Karabu,* 16 F. Supp.2d at 324.

Plaintiff has failed to establish that this Court has personal jurisdiction over Scott, a resident of Pennsylvania. Compl. ¶ 6. Plaintiff's basis for contending that this Court has jurisdiction over Scott is that he is the primary "corporate officer" of RenuEn and Belvedere and he "systematically and continuously" conducts business in New York and has so conducted his personal and professional business activities in New York.

14

Am. Compl. ¶ 12.  Plaintiff does not contend, nor could it, that Scott consented to jurisdiction in New York by entering into a contract with MASQ in his individual capacity. The amended complaint is also devoid of any details that are required to show that Scott was the "primary actor" in the various transactions alleged in the complaint and that he "controlled" the business entities. *See Karabu,* 16 F. Supp.2d at 324.

In *Karabu*, plaintiffs alleged a claim of tortious interference of contract. The defendants, six senior officers of Trans World Airline ("TWA"), moved to dismiss the complaint on the ground of lack of personal jurisdiction.  The plaintiffs in *Karabu* did not contend that the TWA officers personally engaged in business in New York sufficient to confer jurisdiction over them in their personal capacities. Rather, they argued that the district court nevertheless had jurisdiction over the officers under New York's long-arm statute based on an agency theory. *Karabu*, 16 F. Supp. 2d at 323. Plaintiffs contended that since New York courts had jurisdiction over TWA, jurisdiction could be imputed to the corporate officers because they acted as TWA's agents when they threatened and coerced New York travel agents. *Id.*

The district court rejected plaintiffs' argument and granted defendants' Rule 12(b)(2) motion to dismiss. The court found that the plaintiffs failed to establish that the out-of-

15

state TWA corporate officers were the primary actors in the transactions in New York that gave rise to the litigation. *Karabu*, 16 F. Supp.2d at 323. The court also held that plaintiffs failed to establish that the TWA officers exercised control over the actions committed by the corporation's personnel. *Id.* at 324. The court noted that plaintiffs failed to sufficiently detail the defendants' conduct to persuade the court that the officers were the primary actors in the conduct alleged.

The court also held in *Karabu* that control cannot be based merely on a defendant's title and upon conclusory allegations that the defendant controls the corporation. *Id.; see also Pilates, Inc. v. Current Concepts*, 96 Civ. 0043, 1996 WL 599654, at 3 (S.D.N.Y. Oct. 18, 1996)(allegation that officer controls a corporation is not sufficient to confer personal jurisdiction); *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995)(individual who owns corporation generally not subject to personal jurisdiction as a result of corporation's activities unless the corporate veil can be pierced or the corporation acted as an agent for the owner); *Kinectic Instruments v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (individual officers not subject to jurisdiction in New York merely because New York has jurisdiction over corporation).

16

The facts here are analogous to *Karabu*. The amended complaint does not allege that Scott engaged in any business activities in his individual capacity in New York. The closest allegation is that Scott conducted "personal activities" in New York. *See* Am. Compl. ¶ 12. On the contrary, as more fully set forth in Point I *supra*, the amended complaint alleges that Scott acted in his capacity as an <u>officer</u> of the business entities when he allegedly dealt with MASQ.

In the amended complaint, plaintiff also sets forth a new and novel basis for personal jurisdiction over Scott. According to plaintiff, personal jurisdiction over Scott is proper because he filed an action against a non-party (Hanna Shin) in the state Family Court. Am. Compl. ¶ 13. If the Court were to accept plaintiff's argument, New York's long-arm statute could be invoked to reach any non-domiciliary who has  filed an action in a New York court for any reason against any party, regardless of whether the individual has ever conducted business in New York. It is well settled that a plaintiff may only exercise personal jurisdiction over a non-domiciliary under New York's long-arm statute if (i) the non-domiciliary transacted business within the state and (ii) the claims against the non-domiciliary arose out of that business activity. *Aquiline Capital Partners, LLC v. Finarch, LLC,* ___ F. Supp.2d ____, 2012 WL 1764218 at *6 (S.D.N.Y. May 17, 2012).  New York law does not support

17

plaintiff's new and novel basis for long-arm jurisdiction over Scott in his individual capacity.

Since Scott did not enter into a written contract with plaintiff that contained a jurisdiction clause or agree in writing to be responsible for the debts of the corporations, plaintiff must establish that Scott personally transacted business in New York. Again, the closest plaintiff comes is alleging that Scott conducted "personal activities" in New York. As the court held in *Aquiline*, not all purposeful activity by an individual constitutes a "transaction of business" within the meaning of New York's long-arm statute. *Aquiline*, 2012 WL 1764218, at * 6. In the absence of any allegations in the amended complaint that Scott conducted business in New York in his individual capacity and not as an agent of the business entities, plaintiff has failed to establish that this Court has long-arm jurisdiction over defendant Scott. Because plaintiff has failed to establish personal jurisdiction over Scott under New York law, this Court need not address the issue of whether the exercise of personal jurisdiction would offend due process. *See Chaplin*, 2011 WL 2421309, at * 4. Accordingly, the Rule 12(b)(2) motion should be granted and defendant Scott should be dismissed from this action.

18

## Conclusion

For the foregoing reasons, defendant Scott's motion should be granted, the Third, Fourth and Fifth causes of action should be dismissed against Scott, and the Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
       October 4, 2012


                    Respectfully submitted,


                        /s/

                    Roland R. Acevedo (RA 8915)
                    Scoppetta Seiff Kretz & Abercrombie
                    444 Madison Ave, 30th floor
                    New York, New York 10022
                    (212) 371-4500


                    Counsel for Defendants